No. 25-10879

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**Todd Targgart,**

*Plaintiff-Appellant,*

**v.**

**Next Bridge Hydrocarbons, Incorporated; George Palikaras; Robert L. Cook; Clifton Dubose, Jr.; Joseph DeWoody; Lucas T. Hawkins; Delvina Oelkers; Mia Pitts; Kristin Whitley; Gregory McCabe; John Brda,**

*Defendants-Appellees,*

---

On Appeal from the United States District Court for the
Northern District of Texas, Fort Worth Division
Civil Action No. 4:24-cv-00767-P

---

**BRIEF OF APPELLEES
NEXT BRIDGE HYDROCARBONS, INCORPORATED,
ROBERT L. COOK, CLIFTON DUBOSE, JR., JOSEPH DEWOODY,
LUCAS T. HAWKINS, DELVINA OELKERS, MIA PITTS,
KRISTIN WHITLEY, AND GREGORY MCCABE**

---

David J. Drez III
Texas Bar No. 24007127
david.drez@wickphillips.com
LaDawn H. Nandrasy
Texas Bar No. 04715800
ladawn.nandrasy@wickphillips.com
Paul T. Elkins
Texas Bar No. 24092383
paul.elkins@wickphillips.com

Colin P. Benton
Texas Bar No. 24095523
colin.benton@wickphillips.com
**WICK PHILLIPS GOULD
& MARTIN, LLP**
100 Throckmorton St., Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Telecopier: (817) 332-7789

COUNSEL FOR DEFENDANTS-APPELLEES
NEXT BRIDGE HYDROCARBONS, INCORPORATED,
ROBERT L. COOK, CLIFTON DUBOSE, JR., JOSEPH DEWOODY,
LUCAS T. HAWKINS, DELVINA OELKERS, MIA PITTS,
KRISTIN WHITLEY, AND GREGORY MCCABE

No. 25-10879

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**Todd Targgart,**

*Plaintiff-Appellant,*

**v.**

**Next Bridge Hydrocarbons, Incorporated; George Palikaras; Robert L. Cook; Clifton Dubose, Jr.; Joseph DeWoody; Lucas T. Hawkins; Delvina Oelkers; Mia Pitts; Kristin Whitley; Gregory McCabe; John Brda**

*Defendants-Appellees,*

---

On Appeal from the United States District Court for the
Northern District of Texas, Fort Worth Division
Civil Action No. 4:24-cv-00767-P

---

**CERTIFICATE OF INTERESTED PERSONS**

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Plaintiff/Appellants**    Todd Targgart
Mohammed Limon
Steven Martinez

All persons or entities that acquired shares of Next Bridge Hydrocarbons, Inc. in connection with its spinoff from Meta Materials, Inc. on December 14, 2022.[1]

Counsel    Shayne D. Moses
David A. Palmer
MOSES, PALMER & HOWELL, L.L.P.
Fort Worth Club Building
306 West 7th Street, Suite 504
Fort Worth, Texas 76102
Telephone: (817) 255-9101

Adam M. Apton
LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Fl.
New York, New York 10004
Telephone: (212) 363-7500

**Defendants/Appellees**    Next Bridge Hydrocarbons, Inc.
Robert L. Cook
Clifton DuBose, Jr.
Joseph DeWoody
Lucas T. Hawkins
Delvina Oelkers
Mia Pitts
Kristin Whitley
Gregory McCabe

---

[1]    Appellants Targgart, Limon, and Martinez were appointed as lead plaintiffs for the putative class. ROA.338.

| | |
|---|---|
| | Next Bridge Hydrocarbons, Inc. has no parent corporation and no publicly held corporation owns 10% or more of its stock. |
| Counsel | David J. Drez III<br>LaDawn H. Nandrasy<br>Paul T. Elkins<br>Colin P. Benton<br>WICK PHILLIPS GOULD & MARTIN, LLP<br>100 Throckmorton Street, Suite 1500<br>Fort Worth, Texas 76102<br>Telephone: (817) 332-7788 |
| Insurers | AIG Specialty Insurance Co.<br><br>Orion Insurance Intermediaries, LLC<br><br>Endurance American Specialty Insurance Company<br><br>Indian Harbor Insurance Company<br><br>Ascot Insurance Company<br><br>Berkshire Hathaway Specialty Insurance Co. |
| Former counsel | Kristin Cope<br>O'MELVENY & MEYERS LLP<br>2501 North Harwood Street, Suite 1700<br>Dallas, Texas 75201-1663<br>Telephone: (972) 360-1900<br><br>Abby F. Rudzin (*pro hac vice*)<br>O'MELVENY & MEYERS LLP<br>1301 Avenue of the Americas, Suite 1700<br>New York, New York 10019<br>Telephone: (212) 326-2000 |

**Defendant/Appellee**     John Brda

Counsel                    Jason S. Lewis
                           Jason M. Hopkins
                           Ryan D. Lantry
                           DLA PIPER LLP (US)
                           1900 N. Pearl Street, Suite 2200
                           Dallas, Texas 75201
                           Telephone: (214) 743-4546


                                    _/s/ David J. Drez III_____
                                    David J. Drez III

Case: 25-10879   Document: 38-1   Page: 6   Date Filed: 12/01/2025

6

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary for the Court to make a reasoned decision in this appeal. However, should the Court decide oral argument would be helpful in resolving this appeal, Appellees respectfully request an opportunity to participate.

TABLE OF CONTENTS

Certificate of Interested Persons .................................................................2

Statement Regarding Oral Argument .........................................................6

Table of Authorities ..................................................................................10

Issues Presented ........................................................................................16

Statement of the Case ...............................................................................19

    A.    Factual background. ..........................................................19

    B.    Procedural history...............................................................23

Summary of the Argument ........................................................................28

Standard of Review ...................................................................................32

Argument ...................................................................................................33

I.    Appellants failed to state a claim under Section 11 of the Securities Act ...................................................................33

    A.    Section 11 requires plaintiffs give something of "value" for the shares they receive to have statutory standing to sue ....................................................33

    B.    Appellants failed to allege they gave value for their Next Bridge shares .....................................................36

    C.    The facts alleged by Appellants establish the absence of "value" given for their Next Bridge shares ...............................................................43

    D.    Appellants' reliance on SEC Rule 145 and the Internal Revenue Code's definition of "sale" is misplaced ..................................................................52

II.    Appellants failed to state a claim under Section 12 of the Securities Act ..............................................................56

III.  Appellants failed to state a claim under Section 15 of the Securities Act ...................................................................57

IV.  Independent grounds exist for affirming the district court's judgment .........................................................................57

    A.  Section 11's damages cap and formula preclude Appellants' ability to recover damages ..................................58

    B.  Appellees McCabe, Hawkins, and Oelkers are not subject to Section 11 ..........................................................60

    C.  Appellants did not plead that they tendered or sold their shares, as Section 12 requires ............................62

    D.  Appellants failed to adequately allege that the Registration Statement is false or misleading, as Sections 11 and 12 require ...................................63

        1.  The Registration Statement did not misstate the value of the O&G Assets ........................................64

            a.  The Registration Statement did not state what the O&G Assets "were worth." ...............................................................64

            b.  The Registration Statement warned investors that a lease cancellation could affect value ................................65

            c.  Any valuation would be an inactionable opinion statement ...............................69

        2.  The Registration Statement did not materially misrepresent the quality of the future Audit Committee ...............................72

        3.  Next Bridge did not have to disclose additional details about the Option Agreement ..................................................75

8

E.    The individual Appellees are not subject to
Section 15 ............................................................................. 76

Conclusion ................................................................................... 79

Certificate of Service .................................................................. 81

Certificate of Compliance ........................................................... 82

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*7547 Corp. v. Parker & Parsley Dev. Partners, L.P.,*
38 F.3d 211 (5th Cir. 1994)..................................................... 40, 41

*In re AFC Enter., Inc. Sec. Litig.,*
348 F. Supp. 2d 1363 (N.D. Ga. 2004)................................................ 61

*Ahders v. SEI Private Tr. Co.,*
982 F.3d 312 (5th Cir. 2020)................................................................ 76

*Alaska Electrical Pension Fund v. Asar,*
768 Fed. App'x 175 (5th Cir. 2019)...................................................... 32

*Braun v. Eagle Rock Energy Partners, L.P.,*
223 F. Supp. 3d 644 (S.D. Tex. 2016) ................................................. 68

*In re Browning-Ferris Indus. Inc. Sec. Litig.,*
876 F. Supp. 870 (S.D. Tex. 1995) ...................................................... 66

*Buehler v. Dear,*
27 F.4th 969 (5th Cir. 2022) ................................................................ 32

*Dasho v. Susquehanna Corp.,*
461 F.2d 11 (7th Cir. 1972)................................................................... 42

*Dennis v. Gen. Imaging, Inc.,*
918 F.2d 496 (5th Cir. 1990)................................................................ 77

*In re Elscint, Ltd. Sec. Litig.,*
674 F. Supp. 374 (D. Mass. 1987)........................................................ 62

*In re Empyrean Bioscience, Inc. Sec. Litig.,*
255 F. Supp. 2d 751 (N.D. Ohio 2003).......................................... 43, 53

*In re Enron Corp. Sec., Deriv. & ERISA Litig.,*
235 F. Supp. 2d 549 (S.D. Tex. 2002) ................................................. 76

*In re Fannie Mae 2008 Sec. Litig.*,
   742 F. Supp. 2d 382 (S.D.N.Y. 2010)......................................................66

*Firefighters Pension & Relief Fund of the City of New
   Orleans v. Bulmahn*,
   53 F. Supp. 3d 882 (E.D. La. 2014) .......................................................68

*Firefighters Pension & Ret. Sys. v. Student Loan Corp.*,
   951 F. Supp. 2d 479 (S.D.N.Y. 2013).....................................................66

*In re Franklin Bank Corp. Sec. Litig.*,
   782 F. Supp. 2d 364 (S.D. Tex. 2011) ....................................................78

*Freedman v. Value Health, Inc.*,
   190 F.R.D. 33 (D. Conn. 1999).............................................................55

*G.A. Thompson & Co., Inc. v. Partridge*,
   636 F.2d 945 (5th Cir. 1981).................................................................78

*In re Gen. Elec. Co. Sec. Litig.*,
   856 F. Supp. 2d 645 (S.D.N.Y. 2012).....................................................69

*Griego v. Bexar County, Tex.*,
   244 F.3d 133 (5th Cir. 2000) ..........................................................32, 37

*Gurvitz v. Bregman & Co.*,
   379 F. Supp. 1283 (S.D.N.Y. 1974)........................................................43

*Heck v. Triche*,
   775 F.3d 265 (5th Cir. 2014)................................................................76

*Hildes v. Arthur Andersen LLP*,
   734 F.3d 854 (9th Cir. 2013)................................................................55

*Ho v. Duoyuan Glob. Water, Inc.*,
   887 F. Supp. 2d 547 (S.D.N.Y. 2012).....................................................61

*Isquith v. Caremark Int'l, Inc.*,
   136 F.3d 531 (7th Cir. 1998).........................................................passim

*In re Jiangbo Pharm., Inc. Sec. Litig.*,
   884 F. Supp. 2d 1243 (S.D. Fla. 2012)...................................................75

*Johnson v. CBD Energy Ltd.*,
  2016 WL 3654657 (S.D. Tex. July 6, 2016) ........................................ 72

*Kapps v. Torch Offshore*,
  379 F.3d 207 (5th Cir. 2004) ................................................66

*Krim v. pcOrder.com*,
  402 F.3d 489 (5th Cir. 2005) ........................................30, 33

*In re Levi Strauss & Co. Sec. Litig.*,
  527 F. Supp. 2d 965 (N.D. Cal. 2007) ...........................................41, 47

*LoneStar Ladies Inv. Club v. Schlotzsky's Inc.*,
  238 F.3d 363 (5th Cir. 2001) ................................................57

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024) ................................................53

*Mader v. Armel*,
  402 F.2d 158 (6th Cir. 1968) ................................................42

*May v. Barclays PLC*,
  No. 23-cv-2583 (LJL), 2025 WL 887300 (S.D.N.Y.
  Mar. 21, 2025) .......................................49, 50, 56

*May v. Barclays PLC*,
  No. 23-cv-2583 (LJL), 2025 WL 1569633 (S.D.N.Y.
  June 3, 2025) .......................................50, 52

*McFarland v. Memorex Corp.*,
  493 F. Supp. 631 (N.D. Cal. 1980) ................................................61

*Metz v. United Cntys. Bancorp.*,
  61 F. Supp. 2d 364 (D.N.J. 1999) ................................................60, 63

*MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill &
  Partners, L.P.*,
  761 F.3d 1109 (10th Cir. 2014) ................................................71

*Montoya v. FedEx Ground Package Sys., Inc.*,
  614 F.3d 145 (5th Cir. 2010) ................................................32, 57

12

*In re Old Banc One Shareholders Sec. Litigation,*
No. 00 C 2100, 2004 WL 1144043 (N.D. Ill. Apr. 30, 2004) ...............55

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus.*
*Pension Fund,*
575 U.S. 175 (2015) ....................................................................65, 70, 71

*In re Plains All Am. Pipeline, L.P. Sec. Litig.,*
245 F. Supp. 3d 870 (S.D. Tex. 2017) .............................................63, 74

*Plichta v. SunPower Corp.,*
790 F. Supp. 2d 1012 (N.D. Cal. 2011).................................................59

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am.*
*Pipeline, L.P.,*
777 F. App'x 726 (5th Cir. 2019)...........................................................73

*In re Pretium Res. Inc. Sec. Litig.,*
256 F. Supp. 3d 45 (S.D.N.Y. 2017).....................................................70

*Rathborne v. Rathborne,*
683 F.2d 914 (5th Cir. 1982)........................................................ passim

*In re Reliant Sec. Litig.,*
No. H-02-1810, 2004 WL 7347565 (S.D. Tex. Jan. 16, 2004)..............60

*Robertson v. Plano City of Tex.,*
70 F.3d 21 (5th Cir. 1995)....................................................................32

*In re Safety-Kleen Corp.,*
No. C/A 3:00-1145-17, 2002 WL 32349819 (D.S.C. Mar. 27, 2002) ....47

*S.E.C. v. Nat'l Sec., Inc.,*
393 U.S. 453 (1969)...............................................................................42

*SEC v. Datronics Eng'rs, Inc.,*
490 F.2d 250 (4th Cir. 1973)................................................................42

*Slack Techs., LLC v. Pirani,*
598 U.S. 759 (2023) ...................................................................33, 39, 58

*Smallwood v. Pearl Brewing Co.*,
489 F.2d 579 (5th Cir. 1974) ................................................................41

*Spitzberg v. Hous. Am. Energy Corp.*,
758 F.3d 676 (5th Cir. 2014) ................................................................32

*Truk Int'l Fund LP v. Wehlmann*,
737 F. Supp. 2d 611 (N.D. Tex. 2009) ...................................... 67, 70

*Woolgar v. Kingstone Companies, Inc.*,
477 F. Supp. 3d 193 (S.D.N.Y. 2020)..................................................66

*In re XOMA Corp. Sec. Litig.*,
1990 WL 357807 (N.D. Cal. Dec. 27, 1991)........................................61

*Yaroni v. Pintec Tech. Holdings Ltd.*,
600 F. Supp. 3d 385 (S.D.N.Y. 2022)..................................................65

## Statutes

15 U.S.C. §77b(a)(3)................................................................ passim

15 U.S.C. §77k(a) ...................................................... 33, 60, 63

15 U.S.C. §77k(e) ................................................................ 35, 59

15 U.S.C. §77k(g) .........................................................................58

15 U.S.C. §77l(a)(2)..................................................... 56, 57, 62, 63

15 U.S.C. §77o(a) .........................................................................57

26 U.S.C. §302(b)(3)................................................................ 54

Nev. Rev. Stat. 78.120................................................................62

## Regulations

17 C.F.R. §229.404(a) ..................................................................75

17 C.F.R. §230.145................................................................53

## Other Authorities

*Indresco, Inc.*,
Fed. Sec. L. Rep. ¶77,123, 1995 WL 18220702 (Oct. 31, 1995)...........42

*Triad Guaranty, Inc.*,
Fed. Sec. L. Rep. ¶79,046, 2005 WL 7991254 (Aug. 12, 2005)............42

*Worldwide Energy Co., Ltd.*,
SEC No Action Ltrs. 315804, 1972 WL 315804 (Feb. 23, 1972) .........43

## ISSUES PRESENTED

1.     Whether the district court properly dismissed Appellants' Securities Act claims under Sections 11 and 12 for lack of statutory standing when—

- Appellants alleged in their Amended Complaint that the transaction resulting in their ownership of Next Bridge stock was a "distribution" of Next Bridge stock to which they were entitled as holders of Meta II Preferred Stock; Appellants did *not* allege a merger transaction involving a stock-for-stock trade of Meta II Preferred Stock for Next Bridge stock; and

- Claims under Sections 11 and 12 require an exchange "for value" in the transaction resulting in Appellants' ownership of Next Bridge stock, and no "value" was exchanged in the distribution of Next Bridge stock and cancellation of Meta II Preferred Stock; as Appellants accurately pleaded—the oil and gas assets tied to their Meta II Preferred Stock were the very same oil and gas assets tied to their Next Bridge stock.

2.     Whether the district court properly dismissed Appellants' Securities Act claim under Section 15 when liability thereunder is derivative of liability under Sections 11 and 12 and the court properly dismissed Appellants' claims under those Sections for lack of standing.

16

3. Whether independent grounds exist for affirming the district court's judgment when—

- Section 11's damages cap limits recovery to the "price at which the security was offered to the public" and that price in this case was zero.

- Section 11's damages formula requires Appellants to have alleged a diminution in value of their Next Bridge stock, and they did not plead a diminution in value of their stock.

- Appellees McCabe, Hawkins, and Oelkers are not within the zone of liability for a Section 11 claim because none of them signed the Registration Statement, none was a director, person performing similar functions, or partner in Next Bridge at the time the Statement was filed, and none was named in the Statement as being or about to become someone in one of those roles.

- Section 12 limits recovery to the consideration paid for Next Bridge stock less amounts received "upon tender" of the stock or damages if Appellants' sold their stock, and Appellants did not plead they tendered or sold their Next Bridge stock.

- Sections 11 and 12 require allegations that Next Bridge made an untrue statement of a material fact in the Registration Statement or omitted a material fact necessary to make the statements therein not misleading, and Appellants did not

adequately plead a material misstatement or omission in the Registration Statement.

- For Section 15 liability, Appellants were required to allege that the individual Appellees directly or indirectly controlled the alleged Sections 11 and 12 violations by Next Bridge, and Appellants did not plead the individual Appellees exercised such control.

## STATEMENT OF THE CASE

### A.    Factual background.

Appellee Next Bridge Hydrocarbons, Inc. ("Next Bridge") is an oil and gas company headquartered in Fort Worth, Texas. ROA.386. Its predecessor was a publicly traded Texas oil and gas company named Torchlight Energy Resources, Inc. ("Torchlight"). ROA.383. Torchlight began operations in 2010 and owned and operated oil and gas interests in West Texas. ROA.383; ROA.388.

In 2020, Torchlight began looking for a reverse-merger partner. ROA.389. A Canadian technology company, Metamaterial Technologies, Inc. ("Metamaterial"), showed interest because it wanted to gain access to U.S. capital markets. ROA.389-90; ROA.438. Metamaterial was not in the oil and gas business and wanted Torchlight's oil and gas assets divested post-merger. ROA.390. Accordingly, Torchlight and Metamaterial structured the merger to allocate the value of Torchlight's oil and gas assets to the legacy Torchlight stockholders and, post-merger, either sell or divest those assets through a spinoff into a subsidiary of the merged entity. ROA.389-90.

To accomplish this structure, Torchlight would indirectly acquire all Metamaterial shares and the combined company would be renamed

19

"Meta Materials, Inc" ("Meta II"), which would continue Metamaterial's operations. ROA.390. At closing of the merger, Meta II would issue Torchlight stockholders of record a preferred dividend, which would entitle each holder of Torchlight common stock one share of Series A Preferred Stock in Meta II (the "Meta II Preferred Stock") on a one-for-one basis. ROA.390. The Meta II Preferred Stock would correspond to the historical Torchlight oil and gas assets (the "O&G Assets"). ROA.383-84. Owners of the Meta II Preferred Stock would be entitled to receive their proportionate share of the net proceeds of a sale of the O&G Assets or, absent a sale by a date certain, a pro rata dividend of equity in the entity to which Meta II would transfer the O&G Assets prior to the spinoff. ROA.384; ROA.390; ROA.518; ROA.647.

On June 28, 2021, Metamaterial and Torchlight completed the merger and the combined entity—Meta II—declared a dividend on a one-for-one basis of shares of Meta II Preferred Stock to holders of record of Torchlight's common stock. ROA.390; ROA.518; ROA.521; ROA.647; ROA.650. After the merger, on August 31, 2021, Meta II incorporated a new subsidiary, OilCo Holdings, Inc. ("OilCo"), and transferred the O&G Assets to it. ROA.518; ROA.647; ROA.788; ROA.867.

Meta II did not sell the O&G Assets by the set date, so it proceeded with the spinoff. ROA.390. First, in preparation for the spinoff, on June 30, 2022, OilCo Holdings, Inc. changed its name to Next Bridge. ROA.518; ROA.647. Then, on July 15, 2022, Next Bridge filed with the SEC a Registration Statement & Prospectus (the "Registration Statement"), which became effective November 18, 2022. ROA.509; ROA.512; ROA.641.

As described in the Registration Statement, Next Bridge's issuance of shares to the holders of Meta II Preferred Stock would be by way of a "distribution." ROA.521; ROA.650. That means holders of Meta II Preferred Stock would not purchase Next Bridge common stock or exchange their Meta II Preferred Stock for Next Bridge common stock. Instead, on the distribution date, Meta II would "release the shares of [Next Bridge's] Common Stock to the distribution agent to distribute to [holders of Meta II Preferred Stock]." ROA.521; ROA.650. The holders of Meta II Preferred Stock "[would] not be required to make any payment, surrender or exchange [their Meta II Preferred Stock] or take any other action to receive [their] shares of [Next Bridge's] Common Stock ...."

ROA.521; ROA.650.[2] Because, by the time of the spinoff, Next Bridge would already own the O&G Assets corresponding to the Meta II Preferred Stock (per Meta II's previous placement of those assets in OilCo, Next Bridge's predecessor), and in the spinoff Next Bridge stock would be issued to the holders of Meta II Preferred Stock, the Meta II Preferred Stock would be canceled after the distribution of Next Bridge stock. ROA.512; ROA.641. Thus, in effect, the spinoff would only technically or administratively shift the nature of Appellants' investment in the O&G Assets from an interest in an entity (Meta II) that indirectly owned the O&G Assets (as Next Bridge's parent company) to an interest in the entity (Next Bridge) that directly owned the same O&G Assets.

From October 2021 to the spinoff in December 2022, the Meta II Preferred Stock traded on over-the-counter markets under the ticker symbol "MMTLP." ROA.391.

---

[2]    *See also* ROA.512; ROA.641 ("Meta [II]'s stockholders are not required to vote on or take any other action in connection with the Spin-Off.... The [holders of Meta II Preferred Stock] *will not be required to pay any consideration* for the Common Stock they receive in the Spin-Off ....." (emphasis added)); ROA.552; ROA.682 ("Currently, there is no public trading market for [Next Bridge] Common Stock and *no consideration will be paid for the shares of Common Stock distributed in the Spin-Off.*" (emphasis added)).

On December 14, 2022, Meta II completed the spinoff and distributed Next Bridge's equity, in the form of Next Bridge common stock, to the holders of Meta II Preferred Stock. ROA.392.

## B.    Procedural history.

Appellants are Next Bridge shareholders under the distribution of Next Bridge common stock described above.

Appellant Limon was a Torchlight shareholder issued the dividend entitling him to Meta II Preferred Stock, which entitled him to a distribution of Next Bridge common stock in the spinoff. ROA.386. Appellant Targgart similarly was a Torchlight shareholder issued the dividend entitling him to Meta II Preferred Stock, which entitled him to a distribution of Next Bridge stock, but he also purchased Meta II Preferred Stock when it was trading before the spinoff, entitling him to a distribution of Next Bridge stock. ROA.386; ROA.431. Appellant Steven Martinez never held any Torchlight stock; he purchased Meta II Preferred Stock when it was trading before the spinoff, entitling him to a distribution of Next Bridge stock. ROA.386; ROA.432-33.

In addition to Next Bridge, Appellants sued individual defendants that include various Next Bridge current and former executives.

ROA.386-88. As relevant to this appeal, Appellee Gregory McCabe did not hold a position at Next Bridge before or immediately after the spinoff, only becoming a Next Bridge director in June 2023. ROA.388; ROA.933. Appellees Lucas T. Hawkins and Delvina Oelkers did not hold positions at Next Bridge before the spinoff but became Next Bridge officers after the spinoff. ROA.387.

On March 15, 2024, Appellant Targgart filed an initial complaint in the Eastern District of New York, alleging violations of Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") on behalf of persons or entities that acquired Next Bridge stock in connection with the Meta II spinoff. ROA.19. On August 3, 2024, the New York court appointed Appellants Targgart, Martinez, and Limon as Lead Plaintiffs. ROA.327. On August 12, 2024, the case was transferred to the district court. ROA.349.

Appellants filed their Amended Complaint on September 9, 2024, ROA.381, again bringing action on behalf of a putative class of persons or entities that acquired Next Bridge common stock in connection with the spinoff. ROA.413. In addition to their previously asserted violations

of Sections 11 and 15 of the Securities Act, Appellants added alleged violations of Section 12(a)(2) of the Act. ROA.416-29.

Appellants base their claims on three allegedly misleading statements in the Registration Statement. First, they allege the Registration Statement incorrectly stated that Next Bridge's oil and gas properties "were worth" the figures on Next Bridge's balance sheets. ROA.384; ROA.407. Second, they allege the Registration Statement misstated "Next Bridge and its Audit Committee's ability to present accurate financial statements." ROA.384. Third, they allege the Registration Statement did not disclose sufficient information "required under Item 404 of Regulation S-K concerning a related-party transaction." ROA.385.

The Appellees filing this brief include Next Bridge, Robert L. Cook, Clifton DuBose, Jr., Joseph DeWoody, Lucas T. Hawkins, Delvina Oelkers, Mia Pitts, Kristin Whitley, Gregory McCabe (collectively, "Next Bridge," unless the context indicates otherwise). They do not include Appellee John Brda, who is filing a separate brief.[3]

---

[3]   *See* Brief for Defendant-Appellee John Brda. To the extent Appellee Brda's brief on appeal sets forth arguments and authorities supporting the position of the

Next Bridge moved to dismiss Appellants' claims under Rule 12(b)(6). ROA.470. It argued that Appellants have no standing under the Securities Act because, among other reasons, they did not give up anything of value when they were distributed their Meta II Preferred Stock in the spinoff. ROA.481.

Next Bridge also moved to dismiss because Appellants failed to adequately allege under Sections 11 or 12 of the Securities Act that the Registration Statement contained a material misstatement or omission. ROA.491-501.

Appellees McCabe, Hawkins, and Oelkers moved to dismiss because they are not subject to Section 11 of the Securities Act, as they were never in the statute's zone of liability. ROA.491.

Finally, Next Bridge moved to dismiss Appellants' Section 15 claim based on control person liability because that claim cannot exist in the absence of a primary violation of Sections 11 or 12. ROA.501.

The district court granted Next Bridge's motion to dismiss. The court held that statutory standing under sections 11 and 12 of the

---

Appellees in this brief, Appellees incorporate those arguments and authorities by reference.

Securities Act requires a person acquiring a security under a contested registration statement to have given value for the security. Because the Next Bridge shares were distributed to—not purchased by—Appellants, they did not give value for those shares and lack statutory standing (*i.e.,* Sections 11 and 12 do not apply to them) to bring suit. *Targgart v. Next Bridge Hydrocarbons, Inc.*, 790 F. Supp. 3d 520, 524-27 (N.D. Tex. 2025). The court also dismissed Appellants' Section 15 claim because Appellants cannot state a Section 15 claim without a claim under Sections 11 or 12. *Id.* at 528. The court did not reach the other grounds raised in Next Bridge's motion.

## SUMMARY OF THE ARGUMENT

In their Amended Complaint, Appellants inadvertently pleaded *what actually happened* in the transaction that caused them to be distributed Next Bridge stock. They alleged that:

- Appellants' Meta II Preferred Stock corresponded to the *same* oil and gas assets initially owned by Torchlight, then owned by Meta II, and finally owned by Meta II's subsidiary, Next Bridge.

- In the spinoff, Meta II distributed Next Bridge stock to holders of Meta II Preferred Stock (Appellants), which corresponded to the *same* oil and gas assets tied to Appellants' Meta II Preferred Stock.

On appeal, Appellants try mightily to distance themselves from these allegations by ignoring their pleadings and mischaracterizing the transaction as a stock-for-stock merger in which they gave value by "tendering" their Meta II Preferred Stock in "exchange" for their Next Bridge stock. But neither the word "tender" nor "exchange" appear in their 51-page Amended Complaint to allege any such "tender" or "exchange." Further, one piece of their new story on appeal, which they

believe to be critical, is that *after* they were distributed their Next Bridge stock, Meta II canceled their Meta II Preferred Stock. But if the cancellation of that stock is *so* critical, why does it not exist as an allegation in their Amended Complaint?

In truth, the cancellation is not critical. The issue for Sections 11 and 12 is whether "*value*" was exchanged when Next Bridge stock was distributed to Appellants. The district court correctly concluded: none was exchanged. Appellants gave up nothing when they were distributed their Next Bridge stock. There was no change in Appellants' property rights as those rights existed before and after the spinoff. Before the spinoff they held Meta II Preferred Stock tied to the O&G Assets held by Meta II's subsidiary (Next Bridge) and after the spinoff they held Next Bridge stock tied to the same O&G Assets. When their Meta II Preferred Stock was canceled, their interests in the O&G Assets did not change. Only the form of their ownership interest in the assets changed—from owning stock in Next Bridge's parent (Meta II) to owning stock in Next Bridge itself.

In addition to reframing their allegations, Appellants try to focus the Court on the wrong facts. They make much of the timing and

circumstances of how they came to own Meta II Preferred Stock. None of that matters—the only issue relevant is whether they purchased (for value) *Next Bridge* stock; not when and how they came to own Meta II Preferred Stock. The Court can disregard those facts.

Ultimately, the *only* reason Appellants pursue claims under Sections 11 and 12 of the Securities Act is because of the nearly strict liability nature of those claims. They do not want to have to prove intent and reliance for a common law fraud or a Chapter 34 claim. But to take advantage of the lower burden of proof for claims under Sections 11 and 12, "a plaintiff must meet higher procedural standards."[4] One of those standards is the standing provision limiting plaintiffs to the "narrow class of persons" consisting of "those who *purchase* securities that are the direct subject of the prospectus and registration statement."[5] So they must allege they purchased (for value) the securities "the direct subject of the ... registration statement"—*i.e.,* not their Torchlight or Meta II Preferred Stock, their *Next Bridge* stock. By their own allegations, there

---

[4]    *Krim v. pcOrder.com*, 402 F.3d 489, 496 (5th Cir. 2005).

[5]    *Id.* at 495 (emphasis added).

was no exchange for value when Appellants were distributed their Next Bridge stock.

If Appellants have a claim for which a legal remedy exists (they do not), a suit for strict liability under the Securities Act is not one of them. "The office of securities fraud is to protect investors from being induced to make unsound *sales* or *purchases* ...."[6] By Appellants' own pleading, that did not happen here.

The Court should affirm.

---

[6] *Isquith v. Caremark Int'l, Inc.*, 136 F.3d 531, 536 (7th Cir. 1998) (emphasis added).

## STANDARD OF REVIEW

This Court reviews a district court's analysis of a motion to dismiss de novo. *Alaska Electrical Pension Fund v. Asar,* 768 Fed. App'x 175, 179 (5th Cir. 2019) (citing *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 683 (5th Cir. 2014)). Although the Court takes as true the allegations in the complaint, it "cannot assume facts not alleged in the complaint." *Griego v. Bexar County, Tex.*, 244 F.3d 133, 133 (5th Cir. 2000) (citing *Robertson v. Plano City of Tex.*, 70 F.3d 21, 23 (5th Cir. 1995) ("We take as true the allegations in the complaint; however, we cannot assume facts not alleged.")).

The Court may "affirm a district court's Rule 12(b)(6) dismissal on any grounds raised below and supported by the record." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148-49 (5th Cir. 2010); *Buehler v. Dear*, 27 F.4th 969, 993 (5th Cir. 2022) ("[W]e may affirm a ... Rule 12(b)(6) dismissal on any grounds ... supported by the record."). "No cross-appeal is required to support appellate jurisdiction to affirm on alternative grounds." *Montoya*, 614 F.3d at 148-49.

**ARGUMENT**

**I.    Appellants failed to state a claim under Section 11 of the Securities Act.**

**A.    Section 11 requires plaintiffs give something of "value" for the shares they receive to have statutory standing to sue.**

The district court correctly dismissed Appellants' claim under Section 11 of the Securities Act, which provides:

**(a) Persons possessing cause of action; persons liable**

In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, *any person acquiring such security ... may ... sue ....*

15 U.S.C. §77k(a) (emphasis added).

The district court properly construed this language first to mean that "the security the plaintiff acquired must be registered under the contested registration statement." *Targgart*, 790 F. Supp. 3d at 524. *See Slack Techs., LLC v. Pirani,* 598 U.S. 759, 767 (2023) (Section 11 "speaks to a security registered *under the particular registration statement* alleged to contain a falsehood or misleading omission." (emphasis added)); *Krim v. pcOrder.com*, 402 F.3d 489, 495 (5th Cir. 2005). So, Appellants had to have "acquired" the Next Bridge common stock, as the

Next Bridge Registration Statement is the "contested registration statement."

Analyzing the word "acquire," the district court looked to the statute's definition of "sale" to determine who may sue under Section 11. *Id.* at 524-25. "Sale" means "every contract of sale or disposition of a security or interest in a security, *for value.*" *Id.* at 525 (emphasis added). *See* 15 U.S.C. §77b(a)(3) ("The term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security, for value"). The court observed that, for example, in a stock-for-stock merger where a shareholder "trades his stock in one company for stock in another," he "has given value for a security issued under the contested registration statement." *Id.*

The court then analyzed the transaction that caused Appellants to own shares of Next Bridge, and concluded Appellants did not "acquire" their Next Bridge shares in a trade or exchange for value. "Plaintiffs did not give value for their Next Bridge shares. Instead, they paid money for shares of Torchlight or Meta II and later became entitled to a distribution—not a purchase—of Next Bridge shares." *Id.* The court referenced the express language in the Registration Statement that

34

holders of Meta II Preferred Stock were specifically *not* being asked to make any payment or to surrender or exchange their Preferred Stock for shares of Next Bridge stock. *Id.* The court also recognized an inconsistency in Appellants' response to Next Bridge's motion to dismiss where Appellants referred to their "*exchange* of [Meta II Preferred Stock] for [Next Bridge] stock in the spin-off" and their allegation in their Amended Complaint that "[Meta II] completed the Spin-Off and *distributed* [Next Bridge]'s equity to the [holders of Meta II Preferred Stock]." *Id.* (emphasis added). In their complaint, Appellants did not allege an "exchange" of Meta II Preferred Stock for Next Bridge stock; they alleged a "distribution" of Next Bridge stock.

The district court bolstered its construction of Section 11 by recognizing that the statute limits the available damages to "the difference between **the amount paid for the security** (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, ...." *Id.* at 525-26 (emphasis original) (quoting 15 U.S.C. §77k(e)). "The damages provision assumes a plaintiff has 'paid' an 'amount' for the security and thereby sheds light on what the word 'acquire' must mean in subsection (a)." *Id.* at 526. "It

clarifies that the phrase 'person acquiring such security' does not include plaintiffs who receive securities as a distribution without giving any other value in exchange." *Id.* The court concluded Appellants failed to state a Section 11 claim because they "do not claim they purchased shares of Next Bridge; they allege they were distributed the shares as Preferred Shareholders in Meta II." *Id.*

**B.　Appellants failed to allege they gave value for their Next Bridge shares.**

Significantly, Appellants *do not challenge* the district court's construction of the statute as requiring potential plaintiffs to give something of "value in exchange" for the shares they receive to have standing. ANT.Br.21. Appellants only argue the court "held incorrectly that they failed to meet this requirement." ANT.Br.21. To the contrary, the district court correctly held that Appellants failed to allege facts to establish statutory standing under Section 11.

On appeal, Appellants attempt to rewrite the allegations of their Amended Complaint. Their brief is *filled* with assertions that they "tendered" their Meta II Preferred Stock in "exchange" for Next Bridge stock. In fact, to make these assertions, some version of the word "exchange" is in their brief 25 times, and "tender," 11 times. *See*

ANT.Br.2-4, 6, 10, 16-17, 19, 21-30. ***Neither word is in Appellants' 51-page Amended Complaint to allege that they "tendered" their Meta II Preferred Stock in "exchange" for Next Bridge Stock.*** ROA.381-433.[7] Instead, in sharp contrast, and as the district court observed, the Amended Complaint alleged that "[Meta II] *distributed* 165,472,241 shares of [Next Bridge] to the Preferred Stock shareholders." ROA.392 (emphasis added). *See Targgart*, 790 F. Supp. 3d at 525. The district court correctly disregarded Appellants' reliance on unpleaded facts. *Targgart,* 790 F. Supp. 3d at 525. *See Griego*, 244 F.3d at 133 ("In reviewing a dismissal pursuant to Rule 12(b)(6), [the Court] cannot assume facts not alleged in the complaint.").

Appellants only pleaded what actually happened—that they received Next Bridge shares through a distribution. Appellants did not—as they claim on appeal—"tender" their Meta II Preferred Stock in "exchange" for Next Bridge shares. That was not alleged and is not a correct description of the mechanics of the stock dividend distribution

---

[7]   There are three instances in the Amended Complaint where Appellants use those words, but they use them in a different context not relevant to Appellants' failure to allege they "tendered" their Meta II stock in "exchange" for Next Bridge stock. *See* ROA.404-05 (exchange); ROA.429 (tender).

plainly described in the Registration Statement, which refers *hundreds* of times to the spinoff as a "distribution," and characterizes it numerous times as a stock or equity "dividend." ROA.641-1178.[8] The district court's holding is based on the facts actually pleaded and confirmed in the publicly available record.

The labels Appellants now assign to the distribution cannot substantively manufacture "value" where none was in fact exchanged. As the district court held, Appellants "did not give value for the Next Bridge shares. Instead, they paid money for shares of Torchlight or Meta II and later became entitled to a distribution—not a purchase—of Next Bridge shares." *Targgart*, 790 F. Supp. 3d at 525. Appellants' description of the value they believe they gave for their Next Bridge shares is telling. They explain that they each "acquired their *Next Bridge shares* through *different* means": through the stock dividend of Meta II Preferred Stock

---

[8]    *See, e.g.*, ROA.647, ROA.650 ("The Spin-Off is subject to the satisfaction … of the following conditions: the Meta [II] board of directors … shall have … declared the *dividend of our Common Stock* to the holders of Meta [II]'s Series A Preferred Stock." (emphasis added)); ROA.518; ROA.647 (referring to distribution as "dividend of equity").

to Torchlight shareholders or through a purchase of Meta II Preferred Stock prior to the spinoff (or both). ANT.Br.21 (emphasis added).[9]

In other words, Appellants erroneously equate the "value" they paid when they "acquired" various other securities—in other entities, "through different means," in the past—to those traceable to the Registration Statement. These prior acquisitions for value are irrelevant to whether Appellants acquired Next Bridge shares in an exchange for value. The Supreme Court made clear in *Slack* that Section 11 plaintiffs must strictly trace their acquisitions to purchases made pursuant to the contested registration statement, and foreclosed the type of remote linkage Appellants suggest. *See Slack,* 598 U.S. at 767; *Krim v. pcOrder.com*, at 495. (Section 11 standing is limited to "those who *purchase* securities that are the *direct subject* of the prospectus and registration statement."). Here, Appellants admit they "each acquired their Next Bridge shares through *different* means"; those *different* acquisitions are plainly not traceable to the Next Bridge Registration

---

[9]   Appellants brief on this point is replete with incorrect assertions that they "tendered" and "exchanged" their Meta II Preferred Stock for Next Bridge stock, but none of their references to the appellate record support the use of those words. Those words are not in their Amended Complaint or on the cited page of the Registration Statement." ANT.Br.21 (citing ROA.386; ROA.641).

Statement, and do not count as value exchanged for their Next Bridge shares. *See* ANT.Br.21 (emphasis added).

As for Appellants' shares that *are* traceable to the Next Bridge Registration Statement, Appellants' superficial labeling of the distribution as a "tender" and "exchange" in which they gave value in a stock-for-stock trade does not create substance where none exists. Neither does their shallow reading of the stock-for-stock merger cases they cite for support. Unlike here, in each of those cases there was a substantive rather than merely technical or administrative shift in the nature of the plaintiffs' investment, representing a rebalancing of value. Next Bridge does not contend, and the district court did not hold, that stock in one entity can never serve as an exchange of value in acquiring stock of another entity, only that this did not occur here.

In Appellants' cited cases, the plaintiffs gave up and/or the defendants received something of value in the course of the transaction. For example, in *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211 (5th Cir. 1994) [ANT.Br.22], "the assets, liabilities, and operations" of *multiple* entities, including the limited partnership in which the plaintiffs were unitholders, were merged into a newly-formed

corporation, the stock of which was distributed to the former unitholders, including the plaintiffs. *Id.* at 214-15. The Court concluded the transaction was a "sale." *Id.* at 223. The owners, assets, proportion and nature of plaintiffs' ownership changed; the transaction "significantly alter[ed] the nature of the investment." *Id.* (quoting *Rathborne v. Rathborne*, 683 F.2d 914, 920 (5th Cir. 1982)), 229.[10] As a result, the statutory requirement that the disposition be "for value" was easily met. 15 U.S.C. §77b(a)(3). *See also In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 977 (N.D. Cal. 2007) ("However, *7547 Corp.* is distinguishable. Unlike the case here, the securities formerly held by the *7547 Corp.* plaintiffs differed significantly from the stock subsequently issued.").

Similarly, in *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579 (5th Cir. 1974) [ANT.Br.22], Pearl Brewing Co. merged with Southdown, Inc., which had significantly different business interests. *Id.* at 585. In analyzing standing, the Court recognized the unremarkable proposition that a merger can constitute a purchase or sale under the Securities Act.

---

[10]   Not surprisingly, the prospectus called the transaction a "sale," and the "defendants all but concede[d] that the transaction was a 'sale' and that the plaintiffs were 'purchasers' for purposes of the Securities Act ...." *Id.* at 224-25.

*Id.* at 590-91. The Court did not analyze "value" or the difference between the plaintiff's interests before versus after the merger, but the stark differences are obvious—the exchange was "for value." *Id.* at 585, 590-91.[11]

The Next Bridge distribution is far more akin to fact patterns where functional changes occurred in the transaction, but they did not alter the shareholders' economic positions. Circumstances like these—often involving spinoffs, reorganizations, changes of domicile, or liquidating distributions—do not constitute a "sale" under the Securities Act. *See, e.g., Triad Guaranty, Inc.*, FED. SEC. L. REP. ¶79,046, 2005 WL 7991254 (Aug. 12, 2005) (liquidation of subsidiary followed by pro rata distribution of new shares in reorganized company did not constitute a sale of the new shares); *Indresco, Inc.*, FED. SEC. L. REP. ¶77,123, 1995 WL 18220702 (Oct. 31, 1995) (no sale involved when shareholders of operating company received same proportionate interest in a newly-created holding

---

[11] Other cases Appellants rely on fare no better. ANT.Br.22-23 (citing *SEC v. Datronics Eng'rs, Inc.*, 490 F.2d 250, 253-54 (4th Cir. 1973) (finding "value" accrued where spun-off subsidiary's shares began trading publicly causing subsidiary's stock retained by Datronics to increase in value); *Dasho v. Susquehanna Corp.*, 461 F.2d 11, 24 (7th Cir. 1972) (no analysis of "value" in stock-for-stock exchange); *Mader v. Armel*, 402 F.2d 158, 160-61 (6th Cir. 1968) (classic merger; no analysis of "value"); *S.E.C. v. Nat'l Sec., Inc.*, 393 U.S. 453, 467 (1969) (classic merger; no analysis of "value")).

company); *Worldwide Energy Co., Ltd.*, SEC No Action Ltrs. 315804, 1972 WL 315804 (Feb. 23, 1972) (exchange of shares pursuant to plan of reorganization effecting a change of domicile is one of form and not substance); *Gurvitz v. Bregman & Co.*, 379 F. Supp. 1283, 1285-86 (S.D.N.Y. 1974) (stock split does not qualify as a sale); *In re Empyrean Bioscience, Inc. Sec. Litig.*, 255 F. Supp. 2d 751, 765-67 (N.D. Ohio 2003) (no sale, despite existence of registration statement, where distribution of "new" securities merely reflected new ownership after corporate change in domicile).

### C. The facts alleged by Appellants establish the absence of "value" given for their Next Bridge shares.

Instead of alleging facts demonstrating that "value" was given for their Next Bridge shares, Appellants alleged facts affirmatively establishing that such "value" was absent. They alleged:

- The Meta II Preferred Stock "corresponded to the oil and gas assets that historically belonged to Torchlight but were acquired by Metamaterial during the merger (the 'O&G Assets')." ROA.383-84.

- "Holders of the [Meta II] Preferred Stock would be entitled to receive ... equity in a spin-off entity that would own the O&G Assets." ROA.384.

43

- Meta II "completed the spin-off … and, as a result, holders of [Meta II Preferred Stock] received new shares in [Next Bridge]." ROA.384.

Accordingly, Appellants alleged that the *same* O&G Assets were held by Torchlight, then Meta II, and then Next Bridge. That means only *the form* in which Appellants owned the O&G Assets changed, from stock in one corporation to stock in a second corporation and then stock in a third corporation. The district court correctly noted the similarities of this case with *Isquith v. Caremark Int'l, Inc.*, 136 F.3d 531 (7th Cir. 1998), where Judge Posner held that a spinoff that did not effect a "fundamental change" in investors' holdings did not constitute a "sale" under the securities laws. *Targgart,* 790 F. Supp. 3d at 527.

In *Isquith,* pharmaceutical manufacturer Baxter International spun off its wholly-owned subsidiary Caremark. 136 F.3d at 532. In the spinoff, Baxter transferred the ownership of Caremark from Baxter to Baxter's shareholders, "each to receive shares of Caremark proportional to their shares in Baxter, with the result that Caremark would no longer be a subsidiary of Baxter but an independent company." *Id.* As a result, "Baxter shareholders found themselves holding Baxter plus Caremark

44

shares (one of the latter for every four of the former) rather than just Baxter shares." *Id.* at 533.

Analyzing whether the spinoff constituted a "sale" of plaintiffs' Caremark shares for purposes of federal securities fraud, Judge Posner observed:

> [The plaintiffs] did not buy or sell shares in Caremark. They simply received one share of Caremark stock for every four shares they owned of Baxter. They no more "bought" Caremark stock than the recipient of a stock dividend—which the plaintiff concedes the distribution of the Caremark stock was—buys the stock that he receives as a dividend.

*Id.* at 534.[12] Noting that the securities laws "are limited to purchases and sales," the court held: "A change in form will not count as a sale and so will not be actionable; the change must be in some sense 'fundamental' rather than nominal; ...." *Id.* at 535-36.

Concluding there was no "fundamental change" and therefore no "sale," Judge Posner explained:

> In a squeeze-out, stock is exchanged for cash; the person squeezed out no longer has any interest in the corporation; that is unquestionably *a change in his bundle of property rights*. In a spinoff there is no exchange, no forced exit from the corporation, but merely the receipt by the corporation's

---

[12]   As discussed, the Registration Statement characterizes the distribution to Appellants of Next Bridge stock as an equity or stock "dividend." *See, e.g.*, ROA.518; ROA.521; ROA.647; ROA.650.

shareholders of additional stock. Only the form in which the members of the class owned Baxter's assets was changed; it was changed from stock in one corporation to stock in two corporations. After the change the class members *owned the same proportion, carrying the same rights, of the same pool of assets.* Before, their ownership interest was denominated in shares of Baxter; after, in shares of Baxter and Caremark; *the interest itself—the amount of assets owned by members of the class—was unchanged.*

*Id.* at 536 (emphasis added).[13]

This Court conducted a similar analysis, and reached a similar conclusion, in *Rathborne*. There, over his objection, the plaintiff's interests in one corporation, which held multiple properties, were divided into two corporations (the original and a newly-formed entity), between which the same properties were held. *Id.* 683 F.2d at 915-16. He gained his interest in the newly-formed entity via a pro rata distribution of its stock, which he argued was a "sale" of securities, making him a

---

[13]    Next Bridge recognizes that the "forced sale" doctrine discussed in *Isquith* applies in the context of Section 10(b) of the Securities Exchange Act of 1934, but as the district court noted, the interpretation of "acquired" in the 1933 Act has not been litigated in the precise context of this case, where Appellants claim "value" was exchanged based on their *prior* purchases of stock in *other entities*, which entitled them—without giving up anything—to the subsequent distribution of Next Bridge stock. In analyzing whether "value" was exchanged, the district court recognized that what happened in *Isquith* is exactly what happened here, which bolsters the district court's decision. *Targgart*, 790 F. Supp. 3d at 527 ("Plaintiffs argue *Isquith* 'involved [a] scenario[] in which the plaintiffs received distributions of shares without surrendering anything in exchange…. *This case is precisely such a scenario.*" (emphasis added)).

"purchaser" as the recipient of that stock, for purposes of his federal securities lawsuit. *Id.* at 917, 919.

This Court affirmed the district court's holding that the plaintiff was not a statutory purchaser. *Id.* at 919. The Court focused on "whether the transaction … 'transformed' the plaintiff's interests in any real sense." *Id.* at 920 (cleaned up). The Court concluded it had not. Instead, the plaintiff "continued to possess the same proportionate interests in the same enterprises, with the *same assets*, and the *same prospects*." *Id.* (emphasis added). He "did not experience[] a 'purchase' as a consequence of this transaction." *Id.* at 920. *See id.* at 921 ("This plaintiff was not forced to trade apples for oranges.... While he may have been left with new and different pieces of paper, the paper represented the same proportionate interest in the same assets and enterprises he had always held.").[14] *See also In re Safety-Kleen Corp.*, No. C/A 3:00-1145-17, 2002 WL 32349819, at \*1 (D.S.C. Mar. 27, 2002) (holding "no damages can be demonstrated" under Section 11(a) where transaction involved exchange of identical securities); *In re Levi Strauss,* 527 F. Supp. 2d at 977

---

[14]    Again, Next Bridge recognizes the Court's analysis in *Rathborne* is in the context of the 1934 Act, but believes the concepts are instructive in analyzing the 1933 Act's requirement that a "sale" be "for value" in the unique circumstances of this case.

47

(dismissing Section 11 claims where investors' decision was whether to retain or exchange securities "that were identical in all respects").

The same analysis—and result—applies here. As Appellants alleged, after the spinoff, the same shareholders who owned Meta II Preferred Stock, which "corresponded to the [O&G Assets]," ROA.383-84, owned Next Bridge stock, which corresponded to the very same O&G Assets. Accordingly, Appellants went from owning an interest in the O&G Assets via ownership of Meta II Preferred Stock to owning an interest in the *same* O&G Assets via ownership of Next Bridge stock. Indeed, because Next Bridge (and its predecessor OilCo) already owned the O&G Assets *before* the spinoff, the spinoff was effectively no more than an administrative change in Appellants' ownership interests in those Assets. There was no transfer of the O&G Assets in the spinoff. Before the spinoff Appellants owned an interest in Meta II, which owned Next Bridge, which owned the O&G Assets; after the spinoff they owned an interest in Next Bridge, which owned the O&G Assets.

As in *Isquith* and *Rathborne,* there was no change in Appellants' bundle of property rights. After the spinoff, they "owned the same proportion, carrying the same rights, of the same pool of assets." *Isquith*,

136 F.3d at 536; *see Rathborne*, 683 F.2d at 921. Because the spinoff effected a mere change in the *form* of Appellants' ownership interest in the O&G Assets, no "sale" occurred under the Securities Act.[15]

Finally, the distribution of Next Bridge shares was not a "sale" under the Securities Act because a sale requires an exchange of "value" and no new consideration was exchanged. Appellants' contractual right to a distribution of Next Bridge stock was acquired through consideration *previously* paid for their Torchlight or Meta II Preferred Stock. *See, e.g., May v. Barclays PLC*, No. 23-cv-2583 (LJL), 2025 WL 887300, at *12 (S.D.N.Y. Mar. 21, 2025) ("The fact that a plaintiff may have originally obtained the option, convertible shares, or pre-split shares 'for value' is irrelevant. It is axiomatic that past consideration cannot support the formation of a new contract.") (cleaned up).

---

[15] Appellants' attempt to distinguish *Isquith* fails because they ignore the substantive point of the opinion. ANT.Br.29-30. They contend the specifics of the transactions in *Isquith* and this case "are very different," but the differences are distinctions without a true difference. The substantive point of *Isquith* is that there was no fundamental change in the plaintiffs' "bundle of property rights." 136 F.3d at 536. In that case, that meant that after the spinoff the plaintiffs owned stock in both Baxter *and* Caremark because that was necessary to maintain ownership of the same assets before and after the spinoff. Here, just as in *Isquith*, Appellants maintained their ownership interests in the same O&G Assets before and after the spinoff.

*May* is instructive.[16] That case involved Barclays' right to a reverse stock split of the plaintiffs' securities. *Id.* at *5. The securities' terms permitted Barclays to conduct the reverse split, in which Barclays replaced every four shares an investor held with a single new share ostensibly worth four times the value. *Id.* Plaintiffs sued and argued the split constituted a "sale" for purposes of the Securities Act because they had "exchanged their [pre-reverse-split] shares for new shares pursuant to the reverse split." *Id.* at *5-7, 9-10.

The district court held the reverse split was not a "sale" under the Securities Act because a sale required an exchange of "value," and "no new consideration was exchanged" in the split. *May v. Barclays PLC,* No. 23-cv-2583 (LJL), 2025 WL 1569633, at *2 (S.D.N.Y. June 3, 2025) (on reconsideration). For illustration, the court compared Barclays' contractual right to conduct a reverse stock split "to an options contract, ... where an option-holder purchases an option and later

---

[16] In *May*, the court analyzed plaintiffs' Section 12(a)(1) claim under the 1933 Securities Act, alleging a violation of Section 5 of the Act prohibiting the offer or sale of securities without a registration statement. *May*, 2025 WL 887300, at *9-10. The analysis of "sale" in *May* is applicable here because that court analyzed the same definition of "sale," requiring "for value," that is applicable in this case involving Sections 11 and 12 of the 1933 Act. *Id.* at *11 ("The Securities Act defines the term 'sale' … to include every contract of sale or disposition of a security … *for value*." (emphasis original)).

exercises it, only the original purchase is a transfer for value; the option-holder does not convey value when she exchanges her contract right for the stock itself." *Id.*

The plaintiffs in *May* additionally argued that "because the relinquished shares had value, Barclays should be viewed as having sold or disposed of the post-split shares in exchange for that value, regardless [of] whether Barclays already possessed the contractual right to force the split." *Id.* at *3. The court rejected that argument, as well:

> [The Securities Act's] specification that a sale or offer must be "for value" cabins the Securities Act to circumstances in which an investment decision must be made. Where an investor receives a security gratuitously *or as a result of a prior agreement*, there is no investment decision to make .... Thus, the *simple fact that the pre-split shares had value does not mean that Barclays' exchange of every four of those shares for one of the post-split shares is a sale* within the meaning of the Securities Act. In purchasing the pre-split [shares], Plaintiffs gave Barclays the contractual right to effectuate the split and thus had no decision to make and no new value to give up when the split occurred.

*Id.* (emphasis added).

These principles apply here. Appellants received their right to a distribution of Next Bridge stock when they originally purchased Torchlight stock or Meta II Preferred Stock. They gave up no new value

when that right was fulfilled in the distribution of Next Bridge stock in the spinoff. *See May,* 2025 WL 1569633, at *3.

Further, because Appellants received their Next Bridge stock as a result of their rights as holders of Meta II Preferred Stock, there was no investment decision to make at the time of the Next Bridge stock distribution. If the Meta II Preferred Stock had value at the time of the Next Bridge stock distribution, that does not mean the distribution of that stock and cancellation of the Meta II Preferred Stock was a sale within the meaning of the Securities Act. In purchasing the Meta II Preferred Stock, Appellants became entitled to the Next Bridge stock distribution and "thus had no decision to make and no new value to give up when the [spinoff] occurred." *Id.*[17]

### D.   Appellants' reliance on SEC Rule 145 and the Internal Revenue Code's definition of "sale" is misplaced.

Although Appellants accurately state that under SEC Rule 145, certain exchanges of securities "are covered within the registration

---

[17]   Although this Court in *Rathborne* did "not embrace an analysis which focuses upon the presence or absence of consideration as being dispositive of the 'purchase or sale' issue," 683 F.2d at 920 n.18, as in *Rathborne*, the plaintiffs in *May* did not experience a "fundamental change" in the nature of their investment. In fact, there was no change at all, as here. Whether characterized as an absence of consideration or no fundamental change, the result is the same here—there was no "sale … for value."

provisions of the Securities Act as constituting 'sales,'" ANT.Br.23, that Rule does not apply here. *See* 17 C.F.R. §230.145. As the Rule's preliminary Note states, "*the thrust of the rule* is that a ... sale occurs when there is submitted to security holders a plan or agreement pursuant to which such holders are required to elect, on the basis of *what is in substance a new investment decision, whether to accept a new or different security in exchange for their existing security.*" 17 C.F.R. §230.145 (emphasis added). The Rule specifically exempts certain spinoff transactions, and the record is devoid of any allegations that registration of the Next Bridge spinoff was mandatory under that Rule. Further, courts have expressly recognized that an issuer's decision to "over-disclose" via a registration statement is not by default evidence that a sale has actually occurred. *See, e.g.*, *Empyrean*, 255 F. Supp. 2d at 765-67 (voluntary registration itself does not create Section 11 standing when the underlying transaction does not meet the definition of a "sale").[18]

---

[18]   In any event, the Supreme Court in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), held that courts should not defer to an agency's interpretation of a statute and instead must exercise their own independent judgment on questions of law. *Id.* at 413.

Appellants additionally argue that the Registration Statement's disclosures regarding the potential tax classification of the spinoff "supports the conclusion that the spin-off transaction resulted in a 'sale or exchange' (and not a 'distribution')." ANT.Br.27. Again, Appellants are confined to the allegations in their Amended Complaint, where this alleged disclosure is not mentioned. ROA.381-433.

Moreover, whether a transaction constitutes a "sale" under the Securities Act is governed by the definition of "sale" in the Act, not the Internal Revenue Code. A "sale" under the Securities Act includes "every contract of sale or disposition of a security or interest in a security, *for value*." 15 U.S.C. §77b(a)(3) (emphasis added). Under the IRC, a "redemption" of stock is an "exchange" if "the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder." 26 U.S.C. §302(b)(3). Accordingly, a "sale" under the Securities Act is different from a "redemption" under the IRC. Appellants cite no authority applying the IRC's definition of "redemption" to the

Court's analysis of a "sale" under the Securities Act. The IRC definition does not apply.[19]

---

[19] Citing *Hildes v. Arthur Andersen LLP*, 734 F.3d 854 (9th Cir. 2013), a classic merger case, Appellants inexplicably discuss the defense of "negative causation," noting they were "not obliged to obtain Next Bridge stock at the time the Registration Statement was filed but instead could have sold the shares prior to the spin-off's completion while it was trading over-the-counter under the 'MMTLP' ticker, or in the case of Mr. Martinez, could have avoided buying the stock altogether." ANT.Br.24. The court in *Hildes* addressed the issue of loss causation rather than the question of whether a sale occurred under Section 11, and Next Bridge has not raised a "negative causation" defense. Even if Appellants could have sold or not purchased Next Bridge stock, the transaction in the spinoff—the distribution of Next Bridge stock and cancellation of Meta II Preferred Stock—did not constitute a "sale" under the Act because there was no disposition "for value." *See supra* Argument, §I.A-C.

Appellants also cite *Freedman v. Value Health, Inc.*, 190 F.R.D. 33 (D. Conn. 1999), and *In re Old Banc One Shareholders Sec. Litigation*, No. 00 C 2100, 2004 WL 1144043 (N.D. Ill. Apr. 30, 2004), ANT.Br.25, apparently for the (again, unremarkable) proposition that a stock-for-stock exchange can constitute a "sale" under the Securities Act. Although the *Freedman* court recognized the availability of a Securities Act claim for shareholders who became shareholders in the merged entity, the court did not analyze whether the merger transaction constituted a "sale" under the Act. Further, Appellants' description of *Old Banc One* is incomplete. ANT.Br.25. The misleading registration statement was a *joint* registration statement issued by the *pre-merger entities*, not the post-merger entity. *Old Banc One*, 2004 WL 1144043, at *2. This is an important distinction if Appellants are suggesting their purchases of Meta II Preferred Stock (or Torchlight stock) count as value given for a security issued under the contested registration statement. The "value" analysis here focuses on the distribution of Next Bridge stock and cancellation of Meta II Preferred Stock, because the "contested registration statement" is *Next Bridge*'s registration statement. The amounts paid by Appellants for Meta II Preferred Stock or Torchlight stock are irrelevant. *See supra* Argument, §I.A-C.

## II.  Appellants failed to state a claim under Section 12 of the Securities Act.

Section 12(a)(2) of the Securities Act provides:

**(a) In general**

Any person who—

(2) offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading ... shall be liable ... to the person purchasing such security from him ... to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. §77l(a)(2).

The district court held that Appellants' Section 12 claim "suffers from the same fatal flaw as their Section 11 claim" because "[t]o recover under Section 12, plaintiffs must allege they purchased the securities in question." *Targgart*, 790 F. Supp. 3d at *5. *See also May*, 2025 WL 887300, at *16 ("Because Sections 11 and 12(a)(2) are Securities Act siblings with roughly parallel elements, courts typically analyze the two claims together." (cleaned up)). The district court recognized that "'[s]ale' in the Section 12 context takes the same meaning it does in Section 11 cases—'every contract of sale or disposition of a security or interest in a

security, *for value.*'" *Targgart*, 790 F. Supp. 3d at *5 (emphasis original) (citing 15 U.S.C. §77l(a)(2)). As previously established, *see supra* Argument, §I, the district court correctly concluded "Plaintiffs do not plead they purchased shares of Next Bridge—the shares they alleged were issued under a misleading prospectus." *Id.*

## III. Appellants failed to state a claim under Section 15 of the Securities Act.

Under Section 15 of the Securities Act, "all 'controlling persons' of companies liable under Sections 11 or 12 have joint and several liability with the companies they control." *Targgart*, 790 F. Supp. 3d at 528 (citing 15 U.S.C. §77o(a)). Because Appellants' Sections 11 and 12 claims fail, dismissal of their Section 15 claim was proper. *Id.* (citing *LoneStar Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 370 n.33 (5th Cir. 2001) (Section 15 liability derivative of Section 11 and 12 liability).

## IV. Independent grounds exist for affirming the district court's judgment.

If the Court agrees Appellants lacked standing, it can stop there. However, additional, independent grounds exist for affirming the district court's judgment. *Montoya*, 614 F.3d at 148-49.

### A.    Section 11's damages cap and formula preclude Appellants' ability to recover damages.

The Securities Act caps damages for claims under Section 11:

### (g) Offering price to public as maximum amount recoverable.

In no case shall the amount recoverable under this section exceed *the price* at which *the security* was offered to the public.

15 U.S.C. §77k(g). "[T]he security" in Section 11(g) is the security registered under the contested Registration Statement—the Next Bridge shares (not the Torchlight shares or Meta II Preferred Stock Appellants purchased). *See Slack,* 598 U.S. at 767 (Section 11 "speaks to a security registered *under the particular registration statement* alleged to contain a falsehood or misleading omission." (emphasis added)).

"[T]he price" of the offered security is the price offered *to the public*—precisely what the issuer was required to state in the registration statement. "[T]he price" is *not* "the value" of the security offered. Here, the Registration Statement states that the offering price of Next Bridge shares was $0 because those shares were given to holders of Meta II Preferred Stock *at no cost. See* ROA.543; ROA.673 ("We are [] not asking you to make any payment or surrender or exchange any of your shares of Meta Series A Preferred Stock for shares of our Common

Stock."); ROA.512; ROA.641 ("The Series A Preferred stockholders will not be required to pay any consideration for the Common Stock they receive in the Spin-Off ...."); ROA.552; ROA.682. *See, e.g., Plichta v. SunPower Corp.*, 790 F. Supp. 2d 1012, 1023-24 (N.D. Cal. 2011) (finding no standing based on Section 11(g)'s damages cap where registration statement stated: "Cypress stockholders will not pay any consideration or surrender or exchange shares of their Cypress common stock for the shares of our Class B common stock they will receive in the spin-off."). Accordingly, Section 11(g)'s damages cap precludes recovery by Appellants.

And Section 11(e)'s formula for calculating damages precludes Appellants' recovery of damages. The statute permits Appellants to recover at most "the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and [] the value thereof as of the time such suit was brought." 15 U.S.C. §77k(e).[20] The statute requires Appellants to plead "a certain kind of injury"—a diminution in value of the stock purchased under the

---

[20]   The statue also permits recovery of the difference between the amount paid and received in any sale, but Appellants did not allege they sold any Next Bridge stock.

Registration Statement. *Metz v. United Cntys. Bancorp.*, 61 F. Supp. 2d 364, 377-78 (D.N.J. 1999). Appellants did not allege that their Next Bridge share value has declined.

**B.    Appellees McCabe, Hawkins, and Oelkers are not subject to Section 11.**

The district court's dismissal of Appellees McCabe and Hawkins can be affirmed on the alternative ground that they are not within the Section 11 zone of liability. ROA.491. *See* 15 U.S.C. §77k(a). Section 11 lists specific types of individuals who can be liable, including: individuals who signed the registration statement, individuals who were a director of (or performed similar functions) or partner in the issuer when the registration statement was filed, and individuals who, by consent, were named in the registration statement as being or about to become a director, person performing similar functions, or partner. 15 U.S.C. §77k(a)(1)-(3). Non-signing *officers* cannot be liable under Section 11. *See In re Reliant Sec. Litig.*, No. H-02-1810, 2004 WL 7347565, at *19 (S.D. Tex. Jan. 16, 2004) (dismissing Section 11 claim against non-director because "[n]one of the cases cited by Plaintiffs contains a holding that an officer of a corporation who did not sign the registration statement, can

be held liable under §11"); *see also McFarland v. Memorex Corp.*, 493 F. Supp. 631, 642 (N.D. Cal. 1980).

These individual Appellees did not sign the Registration Statement, were not directors when the Registration Statement was filed, and were not identified in the Registration Statement as directors for the future Next Bridge. ROA.518-693; ROA.647-773. As a result, these claims are subject to dismissal. *See, e.g.*, *In re AFC Enter., Inc. Sec. Litig.*, 348 F. Supp. 2d 1363, 1380 (N.D. Ga. 2004) (dismissing Section 11 claim against individual defendants not subject to Section 11); *In re XOMA Corp. Sec. Litig.*, 1990 WL 357807, at *9 (N.D. Cal. Dec. 27, 1991) (dismissing Section 11 claim against "improper §11 defendants" who did not sign the registration statement or were not named as directors).

Although Appellants noted in the district court that Appellee McCabe is repeatedly named in the Registration Statement (ROA.1552-53), he is not named *as a future Next Bridge director*, and that is what matters. Appellants also pointed out that he is a large stockholder (*id.*), but that also does not matter. *See, e.g.*, *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 580 (S.D.N.Y. 2012) (dismissing Section 11 claim

against defendants who allegedly held 20% stock in company because they did not "fall within any of the five parties subject to §11 liability").

As for Appellees Hawkins and Oelkers, the Registration Statement identifies them as Next Bridge *officers*, but officers are not liable under Section 11 unless they are "also a director, ... named in the registration as about to become a director, or signed the registration statement." *In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 385 (D. Mass. 1987). Officers and directors are not the same. Next Bridge is incorporated in Nevada, (ROA.386), where the law provides that "the board of directors has full control over the affairs of the corporation." NEV. REV. STAT. 78.120. Officers, by contrast, only "have such powers and duties as may be prescribed by the bylaws or determined by the board of directors." *Id.* 78.130. Congress chose not to include officers in the zone of Section 11 liability, and there is no basis to expand its reach.

## C. Appellants did not plead that they tendered or sold their shares, as Section 12 requires.

Section 12 of the Securities Act permits a plaintiff to "recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 U.S.C. §77l(a)(2).

Appellants did not plead that they tendered or sold their Next Bridge shares. As a result, this claim is subject to dismissal. *See Metz*, 61 F. Supp. 2d at 378-79 (dismissing Section 12 claim where plaintiff had not tendered or sold shares.).

**D. Appellants failed to adequately allege that the Registration Statement is false or misleading, as Sections 11 and 12 require.**

Appellants' Section 11 claim also fails because they failed to adequately allege that the Registration Statement contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 894 (S.D. Tex. 2017), *aff'd* 777 F. App'x 726 (5th Cir. 2019); 15 U.S.C. §77k(a). Their Section 12 claim fails for the same reason.[21]

---

[21] Section 12 required Appellants allege that Next Bridge sold them a security "by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading." *In re Plains*, 245 F. Supp. 3d at 894; 15 U.S.C. §77l(a)(2).

### 1.   The Registration Statement did not misstate the value of the O&G Assets.

Appellants alleged that the Registration Statement misrepresented what the "oil and gas assets were worth" in the Registration Statement. ROA.384; ROA.407. This allegation fails for several reasons.

#### a.   The Registration Statement did not state what the O&G Assets "were worth."

Appellants' complaint fails because the Registration Statement did not represent what the O&G Assets "were worth." The Registration Statement reported the *carrying value* of the properties, making clear that Next Bridge used the full-cost method of accounting, which means the assets were booked at the *costs* Next Bridge incurred to develop them. The Registration Statement did not suggest that the figures Appellants cited were statements of "value" or "worth." Both the Registration Statement and the Final Prospectus explained that these figures were "*the capitalized costs* for oil and natural gas properties of the Company." ROA.602; ROA.737. A subsequent impairment driven by a then-impending lease expiration does not mean the figure was not based on costs. ROA.493.

Appellants' allegations about "value" and "worth" of the assets "demonstrate no more than [Appellants'] misunderstanding of [Next

Bridge's] financial statements." *Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 404 (S.D.N.Y. 2022) (dismissing Section 11 claim based on allegedly false financial statements). Moreover, "an investor reads each statement within [an SEC filing], whether of fact or of opinion, in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015). Numerous places in the Registration Statement and Final Prospectus explained that these figures represented costs carried on the company's books—not an estimate of value. ROA.568-69; ROA.599-600; ROA.621; ROA.702-03; ROA.734-35; ROA.758. That doomed Appellants' claims based on an alleged misrepresentation of "value" or "worth."

> ### b.    The Registration Statement warned investors that a lease cancellation could affect value.

In the district court, Appellants' actual argument was not that the carrying values were inaccurate, but that the Registration Statement should have also disclosed the potential for a future impairment of those assets if a lease expired and resulting impact on the actual value. The

law does not require such statements, and even if it did, Next Bridge gave such warnings.

"The fact that a financial item is accounted for differently, or in a later period, does not support an inference that a previously filed financial statement was fraudulent." *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 409 (S.D.N.Y. 2010); *see also In re Browning-Ferris Indus. Inc. Sec. Litig.*, 876 F. Supp. 870, 908 (S.D. Tex. 1995) ("The fact that the defendants revised the Form 10–Q estimate in the Form 8–K disclosure does not raise an inference of fraud."). A subsequent write-down of assets does not make the previous asset values false or misleading. *See Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d 193, 224–25 (S.D.N.Y. 2020) (holding that plaintiffs must do more than allege that defendants later changed judgment-based numbers); *Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 495–96 (S.D.N.Y. 2013) (rejecting plaintiffs' claim that reserves were improperly set merely because defendant later took impairment charge).

Statements of value are not actionable if the risk of their potential fluctuation is disclosed. *See Kapps v. Torch Offshore*, 379 F.3d 207, 214–15 (5th Cir. 2004) (holding no material misstatement where company

66

made "cautionary statements" about risk of price fluctuation); *Truk Int'l Fund LP v. Wehlmann*, 737 F. Supp. 2d 611, 625 (N.D. Tex. 2009) ("Summed up, a reasonable investor would know from reading the cautionary language in the Offering Documents that an investment ... was risky and that part of that risk was in the uncertainty of the proved reserves."). Next Bridge explained in its 2023 annual report—filed in 2024—that it noted a triggering event related to the potential expiration of underlying mineral leases and, as a result, recorded an impairment adjustment as of December 31, 2022, and December 31, 2023. ROA.862. But Next Bridge had included meaningful cautionary statements throughout the Registration Statement and Final Prospectus—including, but not exclusively in, the Risk Factors section (ROA.526; ROA.656)—that identified the risk of potential lease expirations and their effect on Next Bridge's financial statements.

Investors were explicitly warned "that currently available resources may not provide sufficient funds to enable us to meet our financing and drilling obligations for the remainder of the 2022 fiscal year and for the 2023 fiscal year." ROA.568-69; ROA.702. Because the financial statements in question were "accompanied by meaningful

cautionary language, which would alert the reasonable investor to consider those statements with healthy skepticism," they were not materially misleading. *Braun v. Eagle Rock Energy Partners, L.P.*, 223 F. Supp. 3d 644, 653 (S.D. Tex. 2016).

The impairment was made as of December 31, 2022, while the offering documents contained balance sheets only through September 30, 2022. Appellants did not allege that the triggering event—*i.e.*, the increased risk of potential lease expiration—occurred *before* the Registration Statement, including any amendments, or Final Prospectus was filed. Later occurring events cannot support a claim of misrepresentation. *See Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, 53 F. Supp. 3d 882, 897 (E.D. La. 2014) ("To the extent plaintiff argues that [the issuer]'s failure to disclose its future bankruptcy rendered its projection of increased hydrocarbon production in 2011 misleading, such attempts to plead fraud by hindsight are impermissible and devoid of plausibility." (footnote omitted)). Appellants' attempt to allege misrepresentation by hindsight should be rejected.

In the district court, Appellants were unable to dispute that Next Bridge disclosed in the Registration Statement the potentially adverse

consequences of lease cancellations. *See* ROA.1558-60. When Next Bridge restated its financials to impair the O&G Assets two years later, it explained that it did so because of the risk that the leases would not be renewed. ROA.862. Appellants responded that they know better: The assets were impaired because "the O&G Assets had lacked produceable oil and gas" as early as 2022, citing paragraph 82 of their Amended Complaint. ROA.1559.

But paragraph 82 just alleges in conclusory fashion that the assets "were at all relevant times substantially worthless." ROA.407. Appellants did not specify the "relevant times" or explain what "substantially worthless" means. This does not equate to a factual allegation that there was never any "produceable oil and gas."

### c. Any valuation would be an inactionable opinion statement.

If the Court considered the balance sheet numbers as statements of "value," or "worth," they would be inactionable opinion statements. *See, e.g., In re Gen. Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645, 653 (S.D.N.Y. 2012) ("Statements estimating the fair market value of assets are opinions, not matters of objective fact."). Reasonable investors understand that assessing oil and natural gas reserves before a well is

developed is not fact. *See In re Pretium Res. Inc. Sec. Litig.*, <u>256 F. Supp. 3d 45, 177</u> (S.D.N.Y. 2017) (holding that estimations of mineral reserves are statements of opinion); *Truk Int'l Fund*, <u>737 F. Supp. 2d at 624</u> ("A reasonable investor would have recognized the speculative and uncertain nature of the formulation of estimates of proved reserves ....").

A claim based on an opinion required Appellants allege that (1) the speaker did not actually hold the stated belief, (2) the opinion included embedded facts that were untrue, or (3) the opinion omitted "material facts about the issuer's inquiry into or knowledge concerning [the] statement of opinion" that "conflict with what a reasonable investor would take from the statement itself." *Omnicare*, <u>575 U.S. at 184</u>, <u>186</u>, <u>188</u>–89. Appellants did not adequately plead any of these three options.

First, Appellants did not allege management's opinions about the balance sheet numbers—which were based on reserve reports of experts in the industry (<u>ROA.589</u>; <u>ROA.724</u>)—were insincerely held.

To state a Section 11 claim based on an opinion, "[t]he investor must identify particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion

70

statement at issue misleading to a reasonable person reading the statement fairly and in context." *Omnicare*, 575 U.S. at 194. Without such allegations, a court must conclude that Next Bridge sincerely held and had a reasonable basis for its opinions. *See MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*, 761 F.3d 1109, 1118 (10th Cir. 2014) (affirming dismissal of Section 11 case where issuer offered opinion that was verified by experts).

Second, Appellants did not allege any untrue "embedded facts." For example, they do not allege that the numbers about which they complain are not based on the correct inputs—*e.g.*, development costs—or that the math was wrong.

Finally, Appellants did not allege that the offering documents omitted any material facts contrary to the balance sheets—they just alleged that the figures were wrong. ROA.1555.

In the face of these arguments, Appellants could not answer why the claimed "valuations" are not statements of opinion, so they tried to say they were "different" than the opinion statements in *Omnicare*. ROA.1561 ("[T]he opinion statements at issue in this case are very different.") *Omnicare* was not limited to its facts; it is "where the

71

Supreme Court clarified the legal standard that should be applied to statements of opinion for section 11 claims," period. *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *9 (S.D. Tex. July 6, 2016). Appellants' decision to declare the Supreme Court's legal standard inoperative, rather than make an argument as to why they have met it, doomed their claims based on a false or misleading statement of "value" or "worth."

### 2. The Registration Statement did not materially misrepresent the quality of the future Audit Committee.

Appellants alleged that the Registration Statement misled investors by misstating "Next Bridge and its Audit Committee's ability to present accurate financial statements." ROA.384. But Appellants did not allege how the statements about the Audit Committee members' qualifications are inaccurate. Appellants seemed to base this allegation on their assumption that the financial statements contained errors. *Id.* ("Despite having an Audit Committee and independent auditor tasked with ensuring the accuracy of NBH's financial statements, the Registration Statement's financial statements contained material errors."). This inference fails for at least three reasons. First, the financial statements were not erroneous, as explained above. Second,

describing the Audit Committee members' qualifications is not false or misleading, regardless of Plaintiffs' allegations of error. *See Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 731 (5th Cir. 2019) (holding statement describing "internal processes and procedures which, although they failed to function correctly" was not false or misleading).

Third, the financial statements in the Registration Statement were completed *before* the Audit Committee was formed, so as a matter of logic, errors in those statements say nothing about the competence of the Audit Committee described in the Registration Statement.[22] A reasonable investor would not consider Next Bridge's *future* Audit Committee as bearing on Next Bridge's ability to present its *past* financial statements. Appellants claim the description of the future committee "lent credence" to the accuracy of the Registration Statement's financials (ROA.410), but that does not suggest that the description of the Audit Committee is misleading. Nor does it make sense: Investors were told that the Audit Committee being described did not yet exist, *i.e.*, could have had *nothing*

---

[22]    The offering documents were filed while Next Bridge was still a wholly owned subsidiary of Meta II, which had its own Audit Committee. ROA.384; ROA.502.

*to do with* the Registration Statement's financial statements. ROA.575 ("We plan to establish an audit committee ...") And the description does not transform the capitalized costs of assets into material misrepresentations. Statements about the future Audit Committee could not be material to investors considering the Registration Statement. *See In re Plains*, 245 F. Supp. 3d at 890 (holding misstatement not material if reasonable investor would not consider it important).

In an effort to salvage their claims, Appellants attempted in response to Next Bridge's motion to dismiss to rewrite their allegations by claiming "NBH did not have adequate audit controls in place." ROA.1561. This pivot is futile because no such allegation exists in Appellants' Amended Complaint. More important, this statement does not solve Appellants' chronological problem: to state a claim based on allegedly false or misleading financial statements, Appellants must have pleaded that "NBH did not have adequate controls in place" *at the time the financial statements were prepared*. Lacking the general allegation, the Amended Complaint necessarily lacked the specific one, making dismissal proper.

**3.   Next Bridge did not have to disclose additional details about the Option Agreement.**

Appellants' final misrepresentation claim was based on Item 404 of SEC Regulation S-K, which they contended required Next Bridge to disclose more details about the Option Agreement. ROA.412-13. This is incorrect.

Item 404 requires Next Bridge's Registration Statement disclose only those related-party transactions that occurred "since the beginning of the registrant's last fiscal year." 17 C.F.R. §229.404(a). Next Bridge is on a calendar fiscal year, so its 2022 offering documents were required to disclose related-party transactions that occurred after January 1, 2021. The Option Agreement is dated August 13, 2020—*i.e.*, months earlier. ROA.605; ROA.716. It was amended in September 2020, still before January 1, 2021. ROA.605; ROA.716. Appellants did not adequately plead this claim without allegation that the Option Agreement was a 2022 transaction. *See In re Jiangbo Pharm., Inc. Sec. Litig.*, 884 F. Supp. 2d 1243, 1259 (S.D. Fla. 2012) ("By failing to state when the transaction occurred, Plaintiffs also fail to sufficiently allege that Defendants had a duty to disclose the transaction at the time they made the statements Plaintiffs challenge.").

**E.   The individual Appellees are not subject to Section 15.**

Control-person liability under Section 15 requires Appellants "at least show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based." *Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014) (cleaned up); *accord Ahders v. SEI Private Tr. Co.*, 982 F.3d 312, 317 (5th Cir. 2020) (affirming dismissal where plaintiff failed to show defendant "directly or indirectly controlled [the] primary violations"). Appellants needed "to allege some facts beyond a defendant's position or title that show that the defendant had actual power or control." *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 235 F. Supp. 2d 549, 595 (S.D. Tex. 2002). They did not.

The alleged violation—filing the offering documents—occurred when Next Bridge was a subsidiary of Meta II, and none of Appellees Pitts, Whitley, or Hawkins had any role at Meta II (ever) and no role at Next Bridge until after the spinoff. As for Appellee McCabe, although Appellants alleged he is a significant shareholder of Next Bridge, it was Meta II that held 100% of Next Bridge's equity before the spinoff. *See* ROA.521; ROA.650.[23] Shareholders are not typically responsible for a

---

[23]   Appellants alleged that Appellee McCabe was Next Bridge's largest shareholder "at all relevant times" (ROA.388), but for Section 15 liability the "relevant time" is

corporation's SEC filings and Appellants did not plead any facts suggesting otherwise. *See, e.g.*, *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509–10 (5th Cir. 1990) (rejecting Section 15 claim against shareholder defendant whose "only relationship" to offering was that he "owned a minority position" in issuer).

Although the other individual Appellees played a role at Next Bridge before the spinoff, that fact alone does not satisfy Appellants' pleading burden. Appellants must allege some facts beyond a defendant's position or title that show actual power or control over the violations. *See id.* (affirming dismissal of Section 15 claim for want of a primary violation and because defendants were not control persons). Appellants made no allegations of control here beyond mere boilerplate allegations about all defendants generally. ROA.416.

Appellants conceded that Meta II conducted the spinoff. ROA.384 (*Id.* ¶¶4–5). The spinoff was subject to Meta II Board approval "in its sole and absolute discretion," and the allegedly misleading financial statements were "derived from the consolidated financial statements and

---

when the alleged violation occurred—*i.e.*, when Meta II owned 100% of Next Bridge's stock.

accounting records of Meta [II]." ROA.553; ROA.693. For Section 15 purposes, "[t]he term 'control' means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 379–80 (S.D. Tex. 2011), *aff'd sub nom. Harold Roucher Tr. U/A DTD 9/21/72 v. Nocella,* 464 F. App'x 334 (5th Cir. 2012). Thus Meta II and its executives—not any of the Appellees—had control over the offering documents.

In response, Appellants cited cases where a court generally found control allegations sufficient, but do not explain why Appellants' allegations are sufficient here. *See* ROA.1564-65. In *G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945 (5th Cir. 1981), for example, the Court found the control allegations sufficient for an individual who "was not only a 24% stockholder and an officer and director, but was apparently involved in the day-to-day coordination of the" allegedly misrepresented topic. *Id.* at 958. McCabe is the only Appellee alleged to be a significant Next Bridge shareholder, but he was neither an officer nor a director and is not alleged to have been involved in day-to-day activities when the

Registration Statement was filed. Thus, Appellants' cases do not help them. Appellants failed to state a claim under Section 15 against any Appellee.

## CONCLUSION

The Court should affirm the district court's judgment.

Respectfully submitted,

*/s/ David J. Drez III*
David J. Drez III
Texas Bar No. 24007127
david.drez@wickphillips.com
LaDawn H. Nandrasy
Texas Bar No. 04715800
ladawn.nandrasy@wickphillips.com
Paul T. Elkins
Texas Bar No. 24092383
paul.elkins@wickphillips.com
Colin P. Benton
Texas Bar No. 24095523
colin.benton@wickphillips.com

**WICK PHILLIPS GOULD &
  MARTIN, LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Telecopier: (817) 332-7789

*Attorneys for Defendants-Appellees
Next Bridge Hydrocarbons,
Incorporated, Robert L. Cook,
Clifton DuBose, Jr., Joseph DeWoody,
Lucas T. Hawkins, Delvina Oelkers,
Mia Pitts, Kristin Whitley, and
Gregory McCabe*

## CERTIFICATE OF SERVICE

I certify that on December 9, 2025, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

Shayne D. Moses
David A. Palmer
MOSES, PALMER & HOWELL, L.L.P.
Fort Worth Club Building
306 West 7th Street, Suite 504
Fort Worth, Texas 76102

Adam M. Apton
LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Fl.
New York, New York 10004

Jason S. Lewis
Jason M. Hopkins
Ryan D. Lantry
DLA PIPER LLP (US)
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201

/s/ David J. Drez III
David J. Drez III

### CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 12,833 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, in Century Schoolbook font 14-point typeface.

*/s/ David J. Drez III*
David J. Drez III